**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

HOLLY JEAN CONWAY GOMEZ,

Plaintiff,

v. No. 1:24-cv-0926 DLM

FRANK BISIGNANO[1],
Commissioner of the Social
Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Holly Jean Conway Gomez's Motion for Judgment on the Pleadings. (Doc. 12.) The Commissioner responded to the motion on February 19, 2025. (Doc. 18.) Having thoroughly considered the record, the submissions of counsel, and the relevant law, and with the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court will **GRANT** Gomez's motion and **REMAND** this matter for proceedings consistent with this Opinion.

## I. Procedural History

Ms. Holly Jean Conway Gomez protectively filed her applications for Title XVI Supplemental Security Income (SSI) and Title II Disability Insurance Benefits (DIB) with the Social Security Administration on October 21, 2021, alleging a disability onset date of September 2, 2021. (Administrative Record[2] (AR) at 244–65.) The Administration denied her applications

[1] Frank Bisignano was confirmed as Commissioner of the Social Security Administration on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Document 11 contains the sealed Administrative Record. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

initially on June 21, 2022 (*id.* at 121–27), and upon reconsideration on April 5, 2023 (*id.* at 150–56). Gomez timely requested a hearing with an administrative law judge (ALJ). (*Id.* at 162–65.)

Both Gomez and a vocational expert (VE) testified during the *de novo* hearing. (*See id.* at 40–63.) ALJ Matthew Allen issued an unfavorable decision on March 4, 2024. (*Id.* at 14–39.) Gomez submitted a Request for Review of Hearing Decision/Order to the Appeals Council on May 8, 2024 (*id.* at 241–43), which the Council ultimately denied on August 1, 2024 (*id.* at 1–6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff filed suit in this Court on September 17, 2024. (Doc. 1.)

## II. The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see also* 20 C.F.R.

§§ 404.1509, 416.909; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "RFC is a multidimensional description of the work-related abilities a claimant retains in spite of [her] medical impairments." *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1310 (D.N.M. 2020) (quoting *Ryan v. Colvin*, No. 15-cv-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016)) (citing 20 C.F.R. § 404.1545(a)(1)) (brackets omitted). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One, ALJ Allen found that Gomez "has not engaged in substantial gainful activity since September 2, 2021, the alleged onset date." (AR at 20 (citing 20 C.F.R. §§ 404.571–76, 416.971–76).) At Step Two, the ALJ concluded that Gomez "has the following severe impairments: seizure disorder, major depressive disorder, anxiety disorder, and posttraumatic stress disorder." (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At Step Three, the ALJ found that Gomez "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).)

At Step Four, the ALJ considered the evidence of record and found:

> [Gomez] has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations except [she] can never climb ladders, ropes, or scaffolds; and no driving and no exposure to hazards, such as unprotected heights and dangerous, moving machinery. [She] can understand, remember, and carry out detailed (but not complex) instructions. [She] can use judgment to make detailed (but not complex) work-related decisions. [She] can have frequent interaction with the public.

(*Id.* at 23.)

The ALJ noted that Gomez "is capable of performing past relevant work as a cashier checker and check cashier" as that type of work "does not require the performance of work-related activities precluded by [her RFC]." (*Id.* at 31 (citing 20 C.F.R. §§ 404.1565, 416.965).) Based on his review of the record and the testimony of the VE, the ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 2, 2021, through the date of [the] decision." (*Id.* at 33 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).)

**III. Legal Standard**

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084) (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by

substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Gomez contends that remand is warranted because: (1) the ALJ failed to properly evaluate the supportability and consistency of a medical opinion rendered by consulting psychologist Shari Spies, Psy.D.; and (2) the ALJ's findings regarding Gomez's ability to sustain concentration, persistence, and pace for work are not based on substantial evidence. (*See* Doc. 12-2[3] at 6.) The Court agrees that the ALJ failed to evaluate the supportability of Dr. Spies' evaluation and will remand on that basis.

### A. Gomez has demonstrated reversible error in the ALJ's analysis of Dr. Spies' opinion.

The Court finds that the ALJ's analysis of Dr. Spies' opinion was legally insufficient. Under the revised regulations, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how he considered those two factors in evaluating medical opinions. 20 C.F.R. § 404.1420c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.* The ALJ need only "provide enough detail such that the

[3] Document 12 contains the Plaintiff's Motion for Judgment on the Pleadings. The Court cites the motion's internal pagination, rather than the CM/ECF document number and page.

Court 'can follow the adjudicator's reasoning' and determine whether the 'correct legal standards have been applied.'" *Emerald v. Kijakazi*, No. 22-cv-0470 GBW, 2023 WL 6389075, at *3 (D.N.M. Sept. 30, 2023) (quoting *Keyes-Zachary*, 695 F.3d at 1166) (subsequent citation omitted). Gomez argues that the ALJ committed legal error in failing to adequately analyze the supportability and consistency of Spies' opinion. (*See* Doc. 12-2 at 6.) Having considered the parties' arguments and the relevant law, the Court will remand on the basis that the ALJ failed to consider the supportability of Dr. Spies' opinion.

Spies performed a mental status consultative examination of Gomez on March 8, 2022, at the request of Disability Determination Services. (*See* AR at 26, 591–93.) Spies concluded that Gomez "meets the DSM 5[4] diagnostic criteria for . . . Posttraumatic Stress Disorder [and] . . . Major Depressive Disorder." (*Id.* at 592.) She noted that Gomez "has epilepsy and . . . often loses the ability to function for hours to days" after having a seizure. (*Id.*) Spies opined that Gomez has marked limitations in her abilities to understand and remember detailed or complex instructions; attend and concentrate; and adapt to change. (*See id.* at 593.) Spies also opined that Gomez has moderate limitations in her abilities to carry out instructions; work without supervision; interact with the public, coworkers, and supervisors; and be aware of normal hazards and respond appropriately. (*See id.*)

The ALJ considered Dr. Spies' opinion and determined it was "not persuasive." (*Id.* at 30.) The ALJ opined that Dr. Spies' assessment was "not consistent with the record, as subsequent treatment records dated from March 2021 through October 2023 routinely described her with appropriate mood and affect and cooperative." (*Id.* (citing AR at 615, 655, 702, 707, 885, 897,

---

[4] "The [Diagnostic and Statistical Manual of Mental Disorders Fifth Edition (DSM 5)] is a diagnostic tool employed by mental health professionals." *Blair v. Alcatel-Lucent Long Term Disability Plan*, 688 F. App'x 568, 574 n.7 (10th Cir. 2017) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 19 (5th ed. 2013)).

921).)

**1. Supportability**

Gomez first argues that while ALJ Allen found the opinion "unpersuasive[,]" he "entirely failed to evaluate [its] supportability . . . ." (Doc. 12-2 at 9 (citing AR at 30–31).) In analyzing supportability, the ALJ must examine how "closely connected" Spies' opinion is to the evidence and her explanations: "'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. §§ 404.1520c(c)(1), 415.920c(c)(1). While the regulations do not mandate the level at which the ALJ must discuss supportability, they do require an explanation that enables the reviewing court to follow the ALJ's reasoning. See *Zambrano v. Kijakazi*, No. 20-1356, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (citing *Frazer v. Kijakazi*, No. 20-1147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022)) (subsequent citations omitted).

Gomez cites *Starman v. Kijakazi*, No. 2:20-cv-0035 SRC, 2021 WL 4459729 (E.D. Mo. Sept. 29, 2021), in support of her position. (*See* Doc. 12-2 at 9.) In *Starman*, the ALJ failed entirely to "articulate how he considered the supportability factor." *Starman*, 2021 WL 4459729 at *5. The *Starman* court recounted several factors the ALJ could have noted in evaluating supportability such as: "[noting] that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, [that the physician] did not examine the claimant, or [that the physician] did or did not provide a detailed explanation for opinion." *Id.* at *4. (gathering cases) (internal citations omitted); *see also S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022) (discussing the *Starman* decision and this list of factors). Although the *Starman* decision is not

binding, the Court finds its reasoning persuasive. Here, not only did the ALJ fail to discuss Spies' examination of Gomez or consider Spies' notes or the evidence Spies relied on, he also *entirely omitted* any mention of the supportability factor. (*See* AR at 30.) As a result, the Court finds the ALJ's assessment of the supportability factor was legally insufficient and warrants remand.

*Zambrano*, a case from this district, provides further support for Gomez's position. *See* 2022 WL 1746765. There, the court held that the ALJ failed to properly assess supportability of a medical provider's opinion because he did not address how the provider's findings and medical examinations either supported or undermined his conclusions. *Id.* at *6. The court found the ALJ dismissed the provider's opinions as "overstatements" without citing any contradictory medical evidence or analyzing the objective medical findings—such as MRI results or physical examination notes. *See id.*

Similarly, here, the Court agrees with Gomez that the ALJ did not address the supportability factor. Beyond his conclusory finding that Dr. Spies' opinion was "unpersuasive," ALJ Allen noted only that Dr. Spies' opinion was "not consistent with the record, as subsequent treatment records dated from March 2021 through October 2023 routinely described her with appropriate mood and affect and cooperative." (AR at 30.) This reasoning primarily reflects an assessment of consistency (discussed below), as it compares Dr. Spies' opinion with other medical evidence in the record to determine whether they align. However, the assessment of supportability requires a distinct analysis—one that examines Spies' own underlying rationale and objective medical findings that substantiate her conclusions. Ultimately, the ALJ entirely failed to address whether the findings from Dr. Spies' consultative examination—such as Gomez's marked limitations in understanding complex instructions and adapting to change—were adequately substantiated by Spies' own observations and reasoning in her report.

The Commissioner responds that the ALJ highlighted Dr. Spies' mental status examination, showing the findings were only minimal. (*See* Doc. 18 at 12 (citing AR at 26).) Given these findings, the Commissioner argues, the basis for Dr. Spies' assessment of marked to moderate work-related mental limitations is unsupported. (*See id.*) I disagree that the ALJ's earlier discussion of Spies' exam findings are indicative of his consideration of the supportability factor. ALJ Allen highlighted isolated portions of the mental status examination—such as Gomez's ability to recall two out of three words and spell a word backward. (*See* AR at 26.) The ALJ did *not* provide, however, any explicit (or even implicit) assessment of whether Spies' examination findings support or fail to support her ultimate findings. (*See id.*)

As the Tenth Circuit has stated, the Court is "empowered only to 'review the ALJ's decision for substantial evidence' and . . . '[is] not in a position to draw factual conclusions on behalf of the ALJ.'" *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001)). At the very least, the ALJ must "provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered . . . [the] supportability for each medical source's opinions." *Zambrano*, 2022 WL 1746765, at *5 (citation omitted). The ALJ did not do so here, and the Court cannot independently assign weight to the Commissioner's characterization of those findings as "minimal" without engaging in its own fact-finding. As such, the Commissioner's argument fails.

The Commissioner further argues that state agency psychologists Drs. Sorenson and Rolison found that Dr. Spies' assessments of limitations were not supported by her own examination findings. (Doc. 18 at 12 (citing AR at 72–73, 83–84).) While Drs. Sorenson and Rolison both note findings from Dr. Spies' evaluation were "inconsistent" with the mental status examination (AR at 73, 84), the ALJ failed to address this point in his assessments of the three

doctors' evaluations. (*See* AR at 29–30.) Consequently, the Court cannot assume that the ALJ considered this aspect of Drs. Sorenson and Rolison's evaluations when assessing the supportability of Dr. Spies' opinion. *See Allen*, 357 F.3d 1140 at 1144.

**2. Consistency**

Gomez similarly maintains that the ALJ's consistency evaluation of Dr. Spies' opinion was not supported by substantial evidence. (Doc. 12-2 at 10.) She contends that the ALJ irrationally relied on treatment notes from healthcare professionals— who treated her for physical impairments rather than assessing her mental health—to "impeach the evidence obtained from [Dr. Spies,] a psychological specialist." (*See id.*) Gomez cites no legal authority in support. For the reasons set forth below, the ALJ's consistency assessment is adequately supported by substantial record evidence, and the Court lacks authority to reweigh the evidence.

In analyzing consistency, an ALJ "compares [the] medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Courts have long recognized that an ALJ "is entitled to rely on *all* the medical evidence in the record." *See Jeffries v. Soc. Sec. Admin.*, 358 F. App'x 25, 32 (10th Cir. 2009) (emphasis added) (citation omitted).

Multiple judges in this district have grappled with whether an ALJ is permitted to consider perfunctory mental health notations in treatment records from providers who treated *physical* symptoms in evaluating an opinion from a provider who treated *mental* symptoms. *See, e.g.*, *Griego v. Kijakazi*, No. 1:20-cv-1187 KBM, 2022 WL35817 (D.N.M. Jan. 4, 2022); *Martinez v. Kijakazi*, No. 1:20-cv-0877 KRS, 2021 WL 6112615 (D.N.M. Dec. 27, 20210; *Kosea v. Kijakazi*,

No. 1:20-cv-0307 WJ/GBW, 2021 WL 3913051 (D.N.M. Sept. 1, 2021); *Linam v. Kijakazi*, No. 1:20-cv-0063 GJF, 2021 WL 3542661 (D.N.M. Aug. 11, 2021); *Stonestreet v. Saul*, No. 1:19-cv-0230 KK, 2020 WL 1049349 (D.N.M. Mar. 4, 2020). In *Stonestreet*, the court questioned the ALJ's use of generalized observations from an emergency room doctor and an orthopedist—who were treating the claimant's physical conditions—to undermine the findings of a psychological specialist. *See Stonestreet*, 2020 WL 1049349, at *10. Critically, the court *also* found that the ALJ ignored treatment notes penned by providers who saw the claimant for mental health treatment that supported the psychological specialist's opinion. *See id.* Thus, the *Stonestreet* court's decision simply "applied the familiar rule that an ALJ is not permitted to pick and choose evidence, taking only parts that are favorable to a finding of nondisability." *See Linam*, 2021 WL 3542661, at *8 (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Subsequent cases in this district have aligned with *Stonestreet*. The *Linam* court found no issue with the ALJ "citing treatment notes from providers who treated Plaintiff for physical symptoms in support of his conclusion that [the examining physician's neuropsychological evaluation] was inconsistent with the record." *See Linam*, 2021 WL 3542661, at *8. The court reasoned that the ALJ also recognized other mental health symptoms documented in the record, ensuring a balanced evaluation. *See id*. Similarly, the court in *Martinez* held that an ALJ may cite non-mental health treatment notes as long as they do not selectively reference evidence to support a denial while ignoring key contradictory findings. *Martinez*, 2021 WL 6112615, at *4. Building on these holdings, the *Griego* court also questioned how limited mental status observations from non-psychological medical visits—such as those conducted during rheumatological and endocrinological evaluations—could wholly undermine a psychological expert's findings. *See Griego*, 2022 WL 35817, at *7. The court avoided reweighing the evidence itself, once again focusing on the ALJ's failure to discuss contrary findings—which

were present in other treatment notes within the record. *See id. at* 7–8.

Here, ALJ Allen adequately explained that "[Spies' opinion is] not consistent with the record, as subsequent treatment records dated from March 2021 through October 2023 routinely described [Gomez] with appropriate mood and affect and cooperative." (AR at 30.) In support of his conclusion, the ALJ noted several treatment notes[5] from other medical sources in the record. (*See id.*). And while these treatment notes are indeed from providers who saw Gomez for physical conditions, Gomez fails to identify any records that contradict the ALJ's conclusion. Thus, unlike the circumstances in *Stonestreet* or *Griego*, Gomez fails to establish that the ALJ failed to consider or wholly dismissed treatment notes that support Dr. Spies' conclusions. (*See* Doc. 12-2 at 10–11.) Thus, Gomez does not demonstrate that the ALJ cherry-picked favorable evidence.

In sum, the ALJ's references to routine mental status findings are sufficient for the Court to follow his logic and make clear that he used these findings to rebut Dr. Spies' mental health conclusions. ALJ Allen's report sufficiently demonstrates that he considered Dr. Spies' opinion in relation to the consistency factor, and the Court therefore rejects Gomez's contrary argument.

**B. Gomez's Other Claim of Error**

Because the Court concludes that remand is required for further findings regarding the

---

[5] ALJ Allen referenced "subsequent treatment records" and cited seven exhibits with records that provide relevant context, including:

1. Salam E Chalouhi, MD noted on 3/15/2021, "Psychiatric: Cooperative, appropriate mood and affect." (AR at 615.)
2. Juan P Navarro, MD noted on 2/7/2023, "Psychiatric: Cooperative, appropriate mood & affect." (AR at 655) (bolding omitted).
3. Jamie Krashin, MD noted on 1/5/2021, "Psychiatric: Cooperative, appropriate mood and affect." (AR at 702.)
4. Terri Caspary-Schmidt, CNM noted on 4/23/2021, "Psych: Appropriate affect and normal mood. Linear thought content." (AR at 707) (underlining omitted).
5. Naomi Yao Swanson, MD noted on 10/17/2023, "Neuro/Psych - Well groomed, affect appropriate, normal speech and concentration[.]" (AR at 885) (underlining omitted).
6. Naomi Yao Swanson, MD noted on 5/22/2023, "Psychiatric: Cooperative, appropriate mood and affect." (AR at 897.)
7. Lucas E Lujan, PA-C noted on 11/23/2021, "Psychiatric: Cooperative, appropriate mood and affect." (AR at 921.)

supportability of Dr. Spies' opinion, the Court does not address Gomez's argument that the ALJ failed to develop the record as to the episodic nature of her impairments or to consider medical opinions from prior to her alleged disability onset date. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court need not reach issues raised that "may be affected by the ALJ's treatment of th[e] case on remand").

## V. Conclusion

The ALJ erred by failing to properly evaluate the supportability of Dr. Spies' opinion. Accordingly, Gomez's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**, and the Court **REMANDS** this case back to the Social Security Administration for further proceedings consistent with this opinion.

________________________________________
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*